IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA LAINE,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK & CO., DOES 1-20,<br><br>    Defendants.<br>_____/ | No. C 13-4109 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PERMANENT INJUNCTION** |

Defendant's motion to dismiss the complaint and plaintiff's motion for a temporary restraining order and/or for a preliminary injunction are scheduled for a hearing on November 15, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument and VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court GRANTS defendants' motion to dismiss and DENIES plaintiff's motion for a temporary restraining order. The Court GRANTS plaintiff leave to amend the complaint. If plaintiff chooses to amend the complaint, the amended complaint shall be filed no later than **November 26, 2013**.

**BACKGROUND**

In June 2004, plaintiff and her former husband obtained a loan from World Savings Bank, FSB in the amount of $361,000. The loan was secured by a deed of trust against real property located at 5450

Betty Circle, Livermore, California (the "subject property"). Docket No. 2, Ex. 3.[1]

On December 31, 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB. *Id.*, Ex. 4 at 2. In April 2009, plaintiff and her former husband received a loan modification from Wachovia Mortgage, FSB. Docket No. 18, Ex. A. In November 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A., before merging with Wells Fargo Bank, N.A. Docket No. 2, Ex. 4 at 7. Plaintiff and her former husband received a second loan modification in November 2009 from Wells Fargo Bank, N.A. Docket No. 18, Ex. B.

The complaint alleges that in late 2012, plaintiff and her husband decided to divorce. Compl. ¶ 15. The complaint does not state when the divorce became final, but does allege that plaintiff's former husband gave plaintiff an Interspousal Transfer Deed for the subject property, and that deed was recorded on March 1, 2013 in Alameda County. *Id.* According to the complaint, sometime in 2012 plaintiff's former husband lost his job and he could not help pay the mortgage payments or legal bills incurred as a result of the divorce. *Id.* The complaint also alleges that when plaintiff's husband lost his job, plaintiff lost her medical insurance. *Id.* ¶ 16. The complaint alleges that "[p]laintiff's increased medical bills and attorney bills caused her to default on her loan payments in about November of 2012."

---

[1] In connection with the filing of the complaint, plaintiff filed copies of documents reflecting certain public records of the Alameda County Recorder's Office regarding the subject property, as well as copies of correspondence between plaintiff and Wells Fargo. Docket No. 2, Ex. 1-4, 7-10. All of these documents are referenced in the complaint, and defendant does not dispute their authenticity. The Court takes judicial notice of these documents. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in Ruling on a 12(b) motion to dismiss.").

However, the Court does not take judicial notice of Exhibits 5 and 6 to plaintiff's declaration – a news article and a Wall Street Journal blog article – because those documents are outside the scope of the complaint and do not contain adjudicative facts appropriate for judicial notice at the pleadings stage.

Plaintiff also seeks judicial notice of a "compilation" of various documents that she states came from the SEC, Office of Thrift Supervision, and the FDIC. Docket No. 20. Defendant objects to the request on the ground that the documents' authenticity and origin cannot be readily determined, and that the contents of the documents are subject to interpretation. The Court agrees with defendant's objections and does not take judicial notice of these documents.

Finally, defendant seeks judicial notice of two loan modification agreements showing that plaintiff and her former husband received loan modifications in 2009. Plaintiff does not dispute the authenticity of these documents, and the Court finds that the documents are suitable matter for judicial notice under Federal Rule of Evidence 201.

*Id.* ¶ 17.

Plaintiff failed to make her November 2012 payment, and the complaint alleges that in that same month "plaintiff began working with Josh Reeves, Home Preservation Specialist, Wells Fargo Home Mortgage to modify her loan. However, Mr. Reeves told plaintiff that the loan modification could not proceed until plaintiff could provide proof of her divorce." *Id.* ¶ 18. The complaint does not state whether or when plaintiff provided Wells Fargo with proof of her divorce, or whether plaintiff in fact applied for a loan modification in November 2012.

The complaint alleges that in January and February of 2013, plaintiff made two house payments, but then missed several more mortgage payments because her medical creditors were threatening to take action against her. *Id.* ¶ 19. On May 28, 2013, a Substitution of Trustee was recorded substituting Regional Services Corporation as the Trustee under the Deed of Trust. Docket No. 2, Ex. 7. The Substitution of Trustee states that World Savings Bank, FSB, its successors and/or assignees was the original beneficiary under the Deed of Trust and that Wells Fargo Bank, N.A. was the current beneficiary. *Id.* That same day, Regional Services Corporation recorded a Notice of Default, stating that plaintiff owed $14,043.14 in arrears. *Id.*, Ex. 8. The complaint alleges that on that also on that same day, plaintiff "attempted to again start a loan modification" but that a Wells Fargo representative named "Roberto" informed told her that Wells Fargo would not start the modification process because plaintiff did not yet have her divorce decree. Compl. ¶ 22.

On June 3, 2013, plaintiff sent Wells Fargo a mortgage payment. *Id.* ¶ 23. On June 7, 2013, Wells Fargo sent plaintiff a letter stating it was returning plaintiff's check because the amount of the payment was less than the amount required to bring the loan current. *Id.* On June 12, 2013, plaintiff spoke to Roberto again about applying for a loan modification, and Roberto again informed her that plaintiff needed proof of her divorce in order to apply for the modification. *Id.* ¶ 24.

The complaint alleges that on June 14, 2013, plaintiff sent Wells Fargo Home Mortgage "a Qualified Written Request pursuant to 12 U.S.C. § 2605 [of the Real Estate Settlement Procedures Act] and Cal. Civ. Code § 2913.55 and § 2913.55 requesting a written itemization of the unpaid principal for

3

the loan." *Id*. ¶ 25 & Docket No. 2, Ex. 10. Pursuant to Cal. Civ. Code § 2913.55, "plaintiff also asked for a copy of the promissory note or other evidence of indebtedness, a copy of the deed of trust, and a copy of any assignment of the deed of trust required to demonstrate the right of the mortgage servicer to foreclose." Compl. ¶ 25.

Wells Fargo responded to plaintiff in a letter dated June 24, 2013. Docket No. 2, Ex. 1. The letter stated that it appeared plaintiff's letter "is more of an attempt at discovery" rather than a "Qualified Written Request" under RESPA. *Id*. Wells Fargo also enclosed a copy of the Note and Deed of Trust with the June 24, 2013 letter, and the letter stated that a complete loan history would follow under separate cover. *Id*. With regard to the ownership and servicing history of plaintiff's loan, the June 24, 2013 letter stated,

> The loan is owned by Wells Fargo Bank, N.A. successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB; formerly known as World Savings Bank, FSB. Please see the attached correspondence from the Office of Thrift Supervision and Comptroller of the Currency recognizing the name changes. The servicing of the loan is performed under Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. Thus, Wells Fargo Bank, N.A. is both the servicer and owner of the loan. The Note and Deed of Trust are held by the Custodian of Records at 4101 Wiseman Blvd., San Antonio, TX 78251.

*Id*.

In July of 2013, plaintiff began the process of applying for a loan modification. Compl. ¶¶ 29-30. On or about August 17, 2013, plaintiff faxed Wells Fargo her application for a loan modification. *Id*. ¶ 33. Several days later, plaintiff faxed her application a second time because Wells Fargo stated it had not received the entire application. *Id*. ¶¶ 34-36. Wells Fargo told plaintiff that it needed additional information in order to process her application. *Id*. ¶¶ 36, 40, 42. The complaint alleges that plaintiff provided the additional information on August 28, 2013, September 3, 2013, and September 4, 2013. *Id.* ¶¶ 37, 41, 43.

On August 29, 2013, a notice of trustee's sale was recorded. Docket No. 2, Ex. 9. A sale was scheduled for September 24, 2013. Compl. ¶ 43.

Plaintiff filed this lawsuit *in pro per* on September 5, 2013. Plaintiff also filed a motion for a temporary restraining order and/or a permanent injunction, and defendant moved to dismiss the

4

complaint.[2]

The complaint alleges that Wells Fargo does not have the right to foreclose on the subject property because World Savings Bank, FSB is the holder of the note. The complaint alleges that "The Deed of Trust shows that World Savings Bank FSB is the beneficiary (lender) and not Wells Fargo as stated in the Substitution of Trustee." *Id.* ¶ 57. The complaint alleges that the Notice of Default "is false because the documents provided by Wells Fargo do not establish that the note was transferred or assigned to Wells Fargo." *Id.* The complaint alleges that the Notice of Default, Substitution of Trustee and Notice of Trustee's Sale contain fraudulent statements and are void as a result. *Id.* The complaint also alleges that Wells Fargo knew or should have known "that the documents they provided do not establish, pursuant to the California Commercial Code, that they own plaintiff's loan or have a right to enforce the note." *Id.* ¶ 58. The complaint also alleges that Wells Fargo did not provide all of the information that plaintiff requested in her Qualified Written Request, and that because Wells Fargo did not provide the information, plaintiff lost an opportunity with a "private investor who wanted to take a second position on the loan and take it out of default and to provide plaintiff with $50,000." *Id.* ¶ 78. The complaint also alleges that Wells Fargo violated the California Homeowner Bill of Rights by foreclosing on the subject property when plaintiff was in the process of seeking a loan modification.

The complaint alleges claims for fraud, negligence, unfair business practices, negligent and intentional infliction of emotional distress, and violations of RESPA, the California Home Owner's Bill of Rights, and Cal. Civ. Code §§ 1511 and 1512.

## LEGAL STANDARDS

**I.      Rule 12(b)(b)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

---

[2] Immediately after the filing of the complaint, the Court referred the parties to the Court's alternative dispute resolution program, and defendant agreed to postpone the sale of the subject property while the parties engaged in ADR. Those efforts have thus far proven unsuccessful, and thus the Court proceeded with the pending motions.

5

1 fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, 2 the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.* 3 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff 4 to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." 5 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of 6 specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." 7 *Twombly*, 550 U.S. at 555, 570.

8 In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court 9 must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the 10 plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the 11 court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions 12 of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

13 Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." 14 *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding *pro se*, the Court has an 15 obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz* 16 *v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, *pro se* pleadings must still 17 allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v.* 18 *Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

19 If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The 20 Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request 21 to amend the pleading was made, unless it determines that the pleading could not possibly be cured by 22 the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal 23 quotation marks omitted).

25 **II.    Temporary restraining order/preliminary injunction**

26 In order to obtain a temporary restraining order or a preliminary injunction, plaintiff "must

6

1 establish that she is likely to succeed on the merits, that he is likely to suffer irreparable harm in the
2 absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in
3 the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations
4 omitted); *see also Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1099 (S.D. Cal. 2012) (standard for
5 granting a temporary restraining order is similar to standard for granting a preliminary injunction).

**DISCUSSION**

**I.     Defendant's motion to dismiss the complaint**

Defendant moves to dismiss the claims alleged in the complaint on the ground that they are either federally preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision ("OTS"); or that the complaint fails to allege the elements of each claim.

In response, plaintiff withdrew her claim under the California Homeowner Bill of Rights. Docket No. 19 at 14:18-20, and accordingly the Court does not address that claim. As to the remaining claims, plaintiff's opposition confirms that all of the remaining claims except for the RESPA claim are premised on the theory that "by the time this action commenced, Wells Fargo was not the mortgagee, creditor, beneficiary, holder or nonholder in possession with rights of a holder for plaintiff's note," *id.* at 1:28-2:2, and that Wells Fargo is required to comply with the California Commercial Code regarding negotiable instruments in order to demonstrate that it has the right to foreclose on the subject property.[3] Relatedly, plaintiff draws a distinction between a "note" and a "mortgage" to argue that while HOLA preempts state law claims relating to the origination, transfer, or servicing of mortgages, her claims are

---

[3] The complaint alleges a claim for negligence based on both wrongful foreclosure and negligent processing of plaintiff's loan modification applications. However, in response to defendant's motion to dismiss, plaintiff states in her opposition that the negligence claim "is not based on loan modification processing. Plaintiff's claim is based on negligently recording, publishing, posting, and mailing foreclosure documents that contain false information." Docket No. 19 at 10:10-14. With respect to the unfair competition claim, the complaint's allegations for that claim incorporate all previous allegations, and plaintiff's opposition defends the unfair competition claim on the wrongful foreclosure theory. *Id.* at 15:20-23.

7

not preempted because this case involves a "note" and not a "mortgage."[4]

### A. State law claims based on wrongful foreclosure

Defendant argues that all of plaintiff's state law claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision ("OTS"). HOLA was enacted in 1933 to regulate federally charted savings associations. It was a "'radical and comprehensive response to the inadequacies of the existing state system,' and [is] 'so pervasive as to leave no room for state regulatory control.'" *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008) (citing *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)). Plaintiff's loan originated with World Savings Bank, a federal savings bank. See Docket No. 2, Ex. 2. Numerous courts have held that HOLA applies to Wells Fargo as the successor to World Savings Bank and Wachovia. *See Castillo v. Wachovia Mortg.*, No. C-12-0101 EMC, 2012 WL 1213296, at \*4 (N.D. Cal. Nov. 13, 2012) (collecting cases).

Pursuant to 12 U.S.C. § 1464, the OTS issued 12 C.F.R. § 560.2, which provides that certain types of state laws are preempted by HOLA. Paragraph (b) of § 560.2 provides a non-exhaustive list of such laws, including state laws that purport to impose requirements regarding "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]" 12 C.F.R. § 560.2(b)(10).

A state law of general applicability may also be preempted by HOLA "as applied":

> [T]he first step will be to determine whether the type of law in question is listed in

---

[4] In its reply, defendant asserts that based upon the arguments in plaintiff's opposition brief, it appears that plaintiff is being assisted by a non-attorney, Dennly R. Becker. Mr. Becker has filed several *pro se* complaints in the Eastern District of California, and he has advanced the same arguments regarding wrongful foreclosure and a "note" versus a "mortgage" in those cases. *See Becker v. Wells Fargo Bank, N.A.*, No. 10-cv-2799 LKK/KJN (E.D. Cal.); *Becker v. Wells Fargo Bank, N.A.*, No. 12-cv-501 KJM CKD (E.D. Cal.). The Court advises plaintiff that assistance is available at the Northern District's Pro Se Help Desk (415-782-8982), and see also http://cand.uscourts.gov/helpcentersf. Plaintiff is also cautioned that "[w]hile a non-attorney may appear pro se on his own behalf, [h]e has no authority to appear as an attorney for others than himself." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (1997) (citations and internal quotation marks omitted).

8

> paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1004-06 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).

Defendant contends that all of plaintiff's state law causes of action are preempted under paragraph (b)(10) because they rely exclusively on allegations of improper foreclosure, which involves the "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). Numerous district courts in this circuit "have previously determined that HOLA preempts claims based on the proposition that a lender wrongfully securitized a loan and that it may not foreclose because it does not 'hold the note.'" *Thomas v. Deutsche Bank Nat. Trust*, No. C 12-00472 CRB, 2012 WL 1600434, at *3 (N.D. Cal. May 7, 2012) (in case where plaintiff's loan originated with World Savings Bank, dismissing as preempted under HOLA claims alleging that Wells Fargo did not purchase the plaintiff's note or mortgage from Wachovia); *see also Hague v. Wells Fargo Bank, N.A.*, C No. 11-2366 TEH, 2011 WL 6055759, at *5 (N.D. Cal. Dec. 6, 2011) ("[t]he fact that the [Plaintiff] challenge[s] the securitization of the [Plaintiff's] mortgage would seem to fall squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with 'investment' in mortgages."; *Dubose v. Suntrust Mortg., Inc.*, No. 11–3264 EJD, 2012 WL 1376983, at *4 (N.D. Cal. Apr.19, 2012) (discussing cases rejecting theories of liability based on securitization of the underlying debt); *Unlu v. Wells Fargo Bank N.A.*, No. 10-5422 EJD, 2011 WL 6141036, at *7 (N.D. Cal. Dec. 9, 2011) (denying leave to amend to challenge securitization of mortgage because amended claim would "seem to fall squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with 'investment' in mortgages"); *Nguyen v. Wells Fargo Bank, N.A.*,749 F. Supp. 2d 1022, 1031-33 (N.D. Cal. 2010) (dismissing as preempted claims alleging improper foreclosure due to wrongful transfer of the deed).

The Court finds the reasoning of these cases persuasive and holds that all of plaintiff's state law claims are preempted because those claims allege that defendant has no right to foreclose on the subject

9

property because defendant does not possess the promissory note and the substitution of Regional Trustee Services Corporation as trustee was invalid. These claims are predicated upon alleged improprieties in the foreclosure procedure used by defendant and therefore affect lending because they involve the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages," as defined in 12 C.F.R. § 560.2(b)(10). Under *Silvas*, this raises a presumption that the claim is preempted, which can be overcome only if it can be clearly shown that the claim fits within the confines of paragraph (c). Plaintiff has not done so. Plaintiff's allegations that defendant has no right to foreclose due to violations of the California Commercial Code and the California Civil Code do not defeat preemption. *See Fowler v. Wells Fargo Bank*, C 12-04869 DMR, 2012 5503538, at *8 (N.D. Cal. Nov. 13, 2012) (dismissing as preempted wrongful foreclosure claim alleging that deed of trust was voidable under California Commercial Code); *cf. also Coavilla v. Wells Fargo Bank, N.A.*, C 13-1003 JSC, 2013 WL 2153855, at *3-4 (N.D. Cal. May 16, 2013) (dismissing claims alleging defendant lacked standing to foreclose based on violations of the California Commercial Code because, *inter alia*, "California's nonjudicial foreclosure statutes . . . exclusively govern nonjudicial foreclosures.") (internal citations omitted).

Accordingly, defendant's motion to dismiss based on preemption by HOLA is GRANTED as to plaintiff's claims for fraud, negligence, unfair business practices, negligent and intentional infliction of emotional distress, and Cal. Civ. Code §§ 1511 and 1512.[5] The Court will GRANT plaintiff leave to amend if plaintiff wishes to allege state law claims that are not based on the theory of wrongful foreclosure articulated in the complaint and plaintiff's opposition.

### B. RESPA claim

Under RESPA, a loan servicer has a duty to respond to a borrower's "qualified written request" ("QWR") for "information relating to the servicing of [his] loan." 12 U.S.C. § 2605(e)(1)(A). The

---

[5] The parties dispute whether there is a private right of action under Cal. Civ. Code §§ 1511 and 1512. The Court finds it unnecessary to resolve this question because, assuming arguendo that there is a private right of action, plaintiff's complaint and opposition make clear that this claim is based on the theory that Wells Fargo does not own the note.

10

complaint alleges that defendant violated § 2605 by failing to respond to her June 14, 2013 Qualified Written Request. Compl. ¶ 77. However, plaintiff has filed with the Court a copy of Wells Fargo's response to the June 14, 2013 letter, in which Wells Fargo provided a copy of the Note and Deed of Trust, stated that it would provide a copy of the entire loan history under separate cover, and responded to plaintiff's questions regarding the ownership and servicing history of the loan. Docket No. 2, Ex. 1. The Court will GRANT plaintiff leave to amend the RESPA claim to specify what information Wells Fargo was required to provide under RESPA that Wells Fargo did not provide.[6] *See Yossa v. Countrywide Home Loans, Inc.*, No. CIV. S-12-0023 MCE GGH PS, 2012 WL 761991, at *3 (E.D. Cal. Mar. 7, 2012) (dismissing RESPA claim with leave to amend where plaintiff did not specify what information was not provided in response to a QWR).

The complaint also alleges that plaintiff sent a QWR on November 6, 2010 to request servicing information and that Wells Fargo did not respond. The complaint does not specify what type of servicing information plaintiff requested. It is also unclear whether plaintiff claims any pecuniary damages as a result of this failure to respond. "Courts routinely hold that a claim based on a loan servicer's failure to respond to a QWR must allege actual damages, as well as a causal relationship between the alleged damages and the RESPA violation." *Pasillas v. Deutsche Bank National Trust Co.*, C 12-04123 LHK, 2013 WL 5225982, at *4 (N.D. Cal. Sept. 17, 2013) (internal citations omitted); *see also Allen v. United Financial Mortg. Corp.*, C No. 09-2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010) (dismissing RESPA claim because "Even if Plaintiff is correct in claiming that Defendants' other conduct resulted in his inability to pay his mortgage, this does not constitute a RESPA claim unless Plaintiff can point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA."). The complaint does allege that plaintiff was damaged by the failure to respond to the June 14, 2013 letter; however, as noted above, plaintiff must amend the complaint to specify what information defendant did not provide in response to the June 14, 2013 letter, and allege

---

[6] Defendant contends that the June 14, 2013 letter was not a QWR because plaintiff mailed it to Wells Fargo "c/o Regional Service Corporation," and not to Wells Fargo's designated address. The Court finds that this argument raises factual issues that go beyond the pleadings, and the Court does not dismiss the RESPA claim on this ground.

11

a causal relationship between the RESPA violation and plaintiff's damages.[7]

## II. Plaintiff's motion for a temporary restraining order and/or preliminary injunction

The Court has dismissed the complaint with leave to amend, and thus plaintiff has not demonstrated that she is likely to succeed on the merits. Accordingly, the Court DENIES plaintiff's motion for a temporary restraining order and/or a preliminary injunction.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motions to dismiss with leave to amend and DENIES plaintiff's motion for a temporary restraining order and/or a preliminary injunction. Docket Nos. 3 & 17. **Should plaintiff choose to file an amended complaint, it shall be consistent with the terms of this order and must be filed on or before <u>November 26, 2013</u>.**

**IT IS SO ORDERED.**

Dated: November 14, 2013

SUSAN ILLSTON
United States District Judge

---

[7] The complaint alleges that a "private investor" wanted to take a "second position" on plaintiff's loan to take it out of default, and that as a result of defendant's failure to provide the requested information, "the private investor did not take a second position on the loan and plaintiff lost the $50,000." Compl. ¶ 78. If plaintiff amends the RESPA claim, plaintiff must allege how the failure to provide the information under RESPA led to the private investor not taking a second position on the loan.

12