IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA L. LAINE, | No. C 13-04109 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

Defendant's motion to dismiss the first amended complaint is scheduled for a hearing on February 28, 2014. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the motion is GRANTED and plaintiff is granted limited leave to amend in accordance with this order. If plaintiff wishes to amend her complaint, she must do so by **March 13, 2014.**

**BACKGROUND**

In June 2004, plaintiff and her former husband obtained a loan from World Savings Bank, FSB in the amount of $361,000. The loan was secured by a deed of trust against real property located at 5450 Betty Circle, Livermore, California. Docket No. 2, Ex. 3. On December 31, 2007, World Savings Bank, FSB changed its name to Wachovia Mortgage, FSB. *Id.*, Ex. 4 at 2. In April 2009, plaintiff and her former husband received a loan modification from Wachovia Mortgage, FSB. Docket No. 18, Ex. A.

In November 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A., before merging with Wells Fargo Bank, N.A. Docket No. 2, Ex. 4 at 7.

In late 2012, plaintiff and her husband decided to divorce. First Amend. Compl. ("FAC") ¶ 15. The complaint does not state when the divorce became final, but does allege that plaintiff's former husband gave plaintiff an Interspousal Transfer Deed for the subject property, and that the deed was recorded on March 1, 2013 in Alameda County. *Id*. According to the FAC, sometime in 2012 plaintiff's former husband lost his job and he could not help pay the mortgage payments or legal bills incurred as a result of the divorce. *Id*. The complaint also alleges that when plaintiff's husband lost his job, plaintiff lost her medical insurance. *Id*. ¶ 16. The FAC alleges that "[p]laintiff's increased medical bills and attorney bills caused her to default on her loan payments in about November of 2012." *Id*. ¶ 17.

Plaintiff failed to make her November 2012 payment, and the complaint alleges that in that same month "plaintiff began working with Josh Reeves, Home Preservation Specialist, Wells Fargo Home Mortgage to modify her loan. However, Mr. Reeves told plaintiff that the loan modification could not proceed until plaintiff could provide proof of her divorce." *Id*. ¶ 18. The complaint does not state whether or when plaintiff provided Wells Fargo with proof of her divorce, or whether plaintiff in fact applied for a loan modification in November 2012.

The FAC alleges that in January and February of 2013, plaintiff made two house payments, but then missed several more mortgage payments because her medical creditors were threatening to take action against her. *Id*. ¶ 19. On May 28, 2013, a Substitution of Trustee was recorded substituting Regional Services Corporation as the Trustee under the Deed of Trust. Docket No. 2, Ex. 7. The Substitution of Trustee states that World Savings Bank, FSB, its successors and/or assignees was the original beneficiary under the Deed of Trust and that Wells Fargo Bank, N.A. was the current beneficiary. *Id*. That same day, Regional Services Corporation recorded a Notice of Default, stating that plaintiff owed $14,043.14 in arrears. *Id*., Ex. 8. The complaint alleges that on that same day, plaintiff "attempted to again start a loan modification" but that a Wells Fargo representative named "Roberto" informed told her that Wells Fargo would not start the modification process because plaintiff did not yet have her divorce decree. FAC. ¶ 22.

On June 3, 2013, plaintiff sent Wells Fargo a mortgage payment. *Id.* ¶ 23. On June 7, 2013, Wells Fargo sent plaintiff a letter stating it was returning plaintiff's check because the amount of the payment was less than the amount required to bring the loan current. *Id.* On June 12, 2013, plaintiff spoke to Roberto again about applying for a loan modification, and Roberto again informed her that plaintiff needed proof of her divorce in order to apply for the modification. *Id.* ¶ 24.

Plaintiff alleges that on June 14, 2013, she sent Wells Fargo Home Mortgage "a Qualified Written Request" pursuant to 12 U.S.C. § 2605 of the Real Estate Settlement Procedures Act ("RESPA") and Cal. Civ. Code § 2913.55 and § 2913.55. *Id.* ¶ 25 & Docket No. 2, Ex. 10. In her FAC, plaintiff alleges that she "asked for specific information including: 4) A copy of my payment history since I was last less than 60 days past due. 5) A written itemization of the entire amount I must pay to bring my loan out of default. and 6) A written itemization of the unpaid principal for my loan." Docket No. 2, Ex. 10; FAC ¶ 25.

Wells Fargo responded to plaintiff in a letter dated June 24, 2013. Docket No. 2, Ex. 1. Wells Fargo enclosed a copy of the Note and Deed of Trust with the June 24, 2013 letter, and the letter stated that a complete loan history would follow under separate cover. *Id.* The letter also stated that "any documents or information not provided in this letter is due to the request being too broad to determine specific information needed, or are considered to be proprietary information of Wells Fargo Home Mortgage and will not be provided at this time without a subpoena." *Id.* The letter included a telephone number plaintiff could call to reach the foreclosure department. *Id.*

In July of 2013, plaintiff began the process of applying for a loan modification. FAC. ¶¶ 29-30. On or about August 17, 2013, plaintiff faxed Wells Fargo her application for a loan modification. *Id.* ¶ 33. Several days later, plaintiff faxed her application a second time because Wells Fargo stated it had not received the entire application. *Id.* ¶¶ 34-36. Wells Fargo then told plaintiff that it needed additional information in order to process her application. *Id.* ¶¶ 36, 40, 42. The complaint alleges that plaintiff provided the additional information on August 28, 2013, September 3, 2013, and September 4, 2013. *Id.* ¶¶ 37, 41, 43. On October 18, 2013,Wells Fargo sent plaintiff a letter stating that they were unable to modify the mortgage, and that absent a successful appeal the foreclosure process would move forward. *Id.* ¶ 47.

3

Plaintiff filed this lawsuit *in pro per* on September 5, 2013. The original complaint alleged claims for fraud, negligence, unfair business practices, negligent and intentional infliction of emotional distress, and violations of RESPA, the California Home Owner's Bill of Rights, and Cal. Civ. Code §§ 1511 and 1512. The complaint alleged that Wells Fargo did not have the right to foreclose on the subject property because World Savings Bank, FSB was the true holder of the note. The complaint also alleged that Wells Fargo did not provide all of the information that plaintiff requested in her Qualified Written Request, and that because Wells Fargo did not provide the information, plaintiff lost an opportunity with a "private investor who wanted to take a second position on the loan and take it out of default and to provide plaintiff with $50,000." Compl. ¶ 78. On November 14, 2013, the Court denied plaintiff's motion for a temporary restraining order and/or preliminary injunction, and granted defendant's motion to dismiss the complaint with leave to amend. With respect to the RESPA claim, the Court directed plaintiff to specify what information Wells Fargo did not provide in response to her request, and allege how the failure to provide the information under RESPA led to the private investor not taking a second position on the loan. Docket No. 27 at 11-12.

On December 23, 2013, plaintiff filed her first amended complaint. On January 6, 2014, the Court denied plaintiff's second motion for a temporary restraining order and/or preliminary injunction, and on January 9, 2014, the Court denied plaintiff's third motion for a temporary restraining order and/or preliminary injunction.

The allegations in the FAC center around defendant's allegedly inadequate response to plaintiff's Qualified Written Request. Plaintiff alleges that defendant's failure to provide her with the "written itemization" needed to bring her loan out of default and the "written itemization" of the unpaid principal on her loan caused her to lose an opportunity with a "private investor who wanted to take a second position on the loan and take it out of default and to provide plaintiff with $50,000." *Id*. ¶¶ 66-67. The FAC alleges that "[b]ut for Wells Fargo's failure to provide plaintiff with the amount needed to bring her loan out of default and the amount of unpaid principal for her loan, plaintiff would have received a $50,000 loan that would have allowed her to bring her loan out of default and prevent the loss of the remaining $50,000 in equity in her home." *Id*. ¶ 66. The FAC alleges claims for violations of RESPA, fraud, negligence, intentional infliction of emotional distress and unfair competition.

4

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding *pro se*, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, *pro se* pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.      Real Estate Settlement Procedures Act**

Plaintiff alleges a claim for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. Plaintiff alleges that she sent defendant a valid Qualified Written Request ("QWR"), defendant did not adequately respond, and as a result she lost the opportunity to obtain a $50,000 loan from a private investor. Docket No. 41, FAC ¶¶ 58-75. Defendant contends, *inter alia*, that plaintiff does not plead any actual pecuniary damages as a result of the RESPA violation.

RESPA requires servicers of a federally related mortgage loans to provide timely written responses to inquiries from their borrowers regarding the servicing of their loans. 12 U.S.C. § 2605(e)(1)(A), (e)(2). Section 2605 requires servicers to "either provide the information to the borrower or explain why such information is not available." 12 U.S.C. § 2605(e)(2). A plaintiff who alleges a violation of section 2605 must also allege actual pecuniary damages. *Tamburri v. Suntrust Mortg. Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012). Specifically, the plaintiff must allege a causal connection between the RESPA violation and the pecuniary damages. *See id.* at 1015; *Guidi v. Paul Fin., LLC*, 13-CV-01919-LHK, 2014 WL 6025, at *4 (N.D. Cal. Jan. 7, 2014). A borrower who proves these elements is entitled to recover the actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $2,000. 12 U.S.C. § 2605(f).

The Court concludes that plaintiff does not sufficiently allege a causal connection between the alleged RESPA violation and her pecuniary damages.[1] Plaintiff alleges that she had an agreement with a private investor who wanted to provide plaintiff with a $50,000 loan and that "[b]ecause Wells Fargo did not provide the amount to bring her loan out of default and the amount of unpaid principal on the loan, the private investor did not take a second position on the loan and plaintiff lost the $50,000 loan." Docket No. 41, FAC ¶ 66. However, the alleged section 2605 violation concerns the failure to provide the written itemizations and the loan history. As Wells Fargo notes, the FAC alleges that Wells Fargo sent plaintiff the May 28, 2013 Notice of Default, which provided the amount required to bring the loan out of default, as well as the August 29, 2013 Notice of Trustee's Sale, which provided the total amount

---

[1] Accordingly, the Court does not reach defendant's other arguments regarding dismissal of the RESPA claim.

6

due on the loan. FAC ¶¶ 21, 38; *see also* Docket No. 2 Ex. 8, at 1; Docket No. 2, Ex. 9, at 1. The FAC does not explain why this information was insufficient for the private investor, nor does plaintiff allege why the private investor needed the particular information she requested in her June 13, 2013 letter – the written itemizations and the loan history – before providing the loan. Thus, in order to plead a plausible RESPA claim, plaintiff must specify how the harm she allegedly experienced – the loss of the $50,000 loan – flowed from defendant's alleged failure to provide the loan history and the written itemizations, in light of the fact that plaintiff possessed information about the total amount required to bring her loan out of default and the amount of unpaid principal on her loan.

Plaintiff also alleges that she is entitled to statutory damages under RESPA because Wells Fargo engaged in a "pattern or practice of noncompliance" in violation of section 2605.[2] Docket No. 41, FAC ¶ 68. Plaintiff pleads five alleged instances where Wells Fargo failed to respond to a QWR, three relating to her and two relating to her neighbor, Dennly Becker. *Id.* ¶¶ 68-71.

To recover statutory damages, a plaintiff must plead a pattern or practice of noncompliance with RESPA. *See* 12 U.S.C. § 2605(f) (1)(b). Under section 2605(e), a loan servicer has an obligation to act when it receives a QWR from the borrower or borrower's agent "for information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A). For example, information requested from the servicer about the validity of the loan does not create an obligation for a servicer to respond. *See Tamburri v. Suntrust Mortgage, Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012).

Plaintiff does not sufficiently allege facts to show that her information requests on November 6, 2013 and December 6, 2013 related to the servicing of her loan. Plaintiff only states that on November 6, 2013 she was "seeking information" and on December 6, 2013 she was "seeking specific information concerning her primary home loan." Docket No. 41, FAC ¶¶ 70-71. She also does not explain what Dennly Becker requested from Wells Fargo. In order to plead a "pattern or practice" violation plaintiff first needs to allege that the requests concerned information regarding the serving of the loans that would obligate Wells Fargo to respond.

---

[2] The parties' papers do not address these allegations. The Court finds it appropriate to review these allegations *sua sponte* in light of the fact that the Court will grant plaintiff one final opportunity to attempt to cure the deficiencies of the complaint.

7

Accordingly, the Court dismisses plaintiff's RESPA claim with leave to amend consistent with the terms of this order.

## II. Fraud

Plaintiff alleges that Wells Fargo's June 24, 2013 letter contained several misrepresentations, including the statement that plaintiff's June 13, 2013 letter was "more of an attempt at discovery" than a qualified written request under RESPA, as well as a "misrepresentation by omission" because Wells Fargo did not tell plaintiff that Section 2605 allows borrowers to seek specific information. Docket No. 41, FAC ¶¶ 76-78. Plaintiff also alleges the statement in the letter to the effect that "any document or requested information not provided in this letter is due to the request being too broad to determine the specific information needed, or are considered to be proprietary information," is fraudulent, because her request was specific. *Id.* ¶¶ 79-80.

Defendant contends that the fraud claim should be dismissed because plaintiff has not alleged the elements of fraud, nor has she alleged those elements with particularity as required by Federal Rule of Civil Procedure 9(b). A claim for fraud must have the following elements: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (citation omitted); *see also In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("[A] plaintiff must set forth what is false or misleading about a statement, and why it is false."). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1103 (9th Cir. 2003). To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by the 'who, what, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)).

The Court concludes that plaintiff's fraud allegations are deficient. To support fraud, an "alleged misrepresentation must ordinarily be an affirmation of past or existing facts." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999); *see Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 ("expressions of opinion are not generally treated as representations of fact, and thus

8

are not grounds for a misrepresentation cause of action"). Here, plaintiff alleges that Wells Fargo's characterization of her requests as "too broad" and calling for "proprietary" information was fraudulent. However, these statements are more akin to opinions than statements of fact and thus cannot support a fraud claim. Further, "[t]he alleged misrepresentation must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud. . . ." *Glen Holly Entertainment*, 100 F. Supp. 2d at 1093.

In addition, even if the challenged statements or the failure to inform plaintiff that she had a right to request specific information under RESPA could provide the basis for a fraud claim, plaintiff does not allege any facts regarding Wells Fargo's knowledge or intent to defraud. Plaintiff simply alleges that Wells Fargo employee Nicole Adams "knew or should have known" that the information plaintiff requested was specific and not too broad or proprietary to Wells Fargo, and that Wells Fargo intended to defraud her because the letter was "cleverly crafted." Docket No. 41, FAC ¶¶ 84, 85. These allegations are too vague to support a fraud claim.

Finally, the FAC does not adequately allege damages for the reasons discussed above. Plaintiff alleges that she relied on Wells Fargo's representations and did not demand that Wells Fargo provide the written itemizations, and that as a result of the failure to provide that information, the private investor decided not to give her a $50,000 loan. Docket No. 41, FAC ¶ 87. Plaintiff does not explain why the lender needed the itemizations, why she never followed up with Wells Fargo to obtain them, or why the Notice of Default and Notice of Trustee's Sale was insufficient.

The Court concludes that plaintiff cannot cure these deficiencies and DISMISSES the fraud claim without leave to amend.

## III.     Negligence

Plaintiff alleges a claim for negligence and negligent infliction of emotional distress. FAC ¶¶ 91-106. Plaintiff predicates her claim on violations of RESPA, California Civil Code section 1711, and the Home Owners' Loan Act ("HOLA"). *Id*. The alleged RESPA violations are detailed *supra*. With regard to section 1711, plaintiff alleges that defendant violated that statute by sending her "a letter that contained misrepresentations and was deceitful." *Id.* at ¶ 97. Plaintiff alleges that HOLA preempts California law,

and thus that defendant violated HOLA by attempting to non-judicially foreclose on her home pursuant to California Civil Code section 2924. *Id.* at ¶ 101.

To state a claim for negligence a party must plead (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). Defendant contends that plaintiff's negligence claim fails because "[t]o the extent Plaintiff is trying to establish a duty of care based on RESPA, i.e., as some type of negligence per se argument, the fact that she has not adequately alleged a RESPA violation . . . is fatal to this claim." Docket No. 44 at 10:9-12. For the reasons stated *supra*, the Court agrees.

The Court also finds that plaintiff cannot predicate her negligence claim on an alleged violation of California Civil Code section 1711. Section 1711 states, "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711; *see also Cohen v. Citizens Nat. Trust & Sav. Bank*, 143 Cal. App. 2d 480, 486 (1956) (" . . . it is apparent that the legislature intended merely to grant relief to those relying upon statements in advertisements or communicated by means of other mass media. In other words, statements which the speaker or writer intends to reach a considerable number of persons and cause reliance by a class or the public."). Plaintiff does not allege any deceitful statements that defendant made to the public, nor could she based upon the facts alleged in the FAC.

The Court also concludes that to the extent the negligence claim is based on HOLA, the claim fails as a matter of law. Plaintiff alleges that HOLA preempts California law, and thus that defendant violated HOLA by attempting to non-judicially foreclose on her home pursuant to California Civil Code section 2924. Docket No. 41, FAC ¶¶ 101-106. However, as the Court has noted in a previous order, plaintiff misunderstands case law regarding HOLA preemption. The cases cited by plaintiff do not hold that banks may not proceed with non-judicial foreclosures in California, and to the contrary, numerous courts have upheld California's non-judicial foreclosure statute. *See e.g.*, *Charmicor v. Deaner*, 572 F.2d 694 (9th Cir. 1978). The cases plaintiff cites simply hold that a homeowner may not bring a claim alleging violations of sections of the non-judicial foreclosure statute because those claims are preempted by HOLA. *See e.g., Giordano v. Wachovia Mortg., FSB*, No. 5:10-cv-04661-JF, 2010 WL 5148428, at *4 (N.D. Cal. Dec. 14, 2010).

1    Thus, to the extent plaintiff's negligence claim is predicated on violations of California Civil
2 Code section 1711 and HOLA, it is dismissed without leave to amend.  To the extent plaintiff's
3 negligence claim is predicated on a violation of RESPA, it is dismissed with leave to amend.

**IV.    Intentional Infliction of Emotional Distress**

Plaintiff alleges a cause of action for intentional infliction of emotional distress ("IIED"). Docket No. 41, FAC ¶¶ 107 -121.  Plaintiff bases her IIED claim on defendant's alleged violations of RESPA and HOLA, as well as fraud.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citing *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965 (1993)).

The Court concludes that plaintiff's IIED claim fails as a matter of law.  In order to successfully plead an IIED claim the alleged conduct must be so outrageous "as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050.  Plaintiff bases her RESPA and fraud claims on defendant's failure to adequately respond to her QWR. Docket No. 41, FAC ¶¶ 109-116.  Even if the RESPA and fraud claims were properly pled, defendant's conduct is not outside "all bounds usually tolerated by a decent society" as required to plead a claim of IIED. *See Hughes*, 46 Cal. 4th at 1050; *see also Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862 (N.D. Cal. 2010) (holding that a loan servicer's alleged failure to send foreclosure notices does not qualify as outrageous conduct or even indicative of bad faith).  Further, as discussed above, defendant did not violate HOLA by non-judicially foreclosing, and therefore this conduct cannot be classified as outrageous.  Accordingly, the Court dismisses plaintiff's intentional infliction of emotional distress claim without leave to amend.

**V.    Unfair Competition**

Plaintiff alleges a claim of unfair competition pursuant to California Civil Code section 17200.

1 Docket No. 41, FAC ¶123.  Plaintiff predicates her section 17200 claim on the alleged violations of (1)
2 RESPA; (2) fraud on the public pursuant to California Civil Code 1711; (3) negligence pursuant to
3 California Civil Code section 1714[3]; and (4) intentional infliction of emotional distress.  *Id.*  Defendant
4 argues that this claim fails for the same reasons that the underlying claims are deficient.  Defendant
5 additionally argues that plaintiff has not properly pled an injury-in-fact to support her claim.

To establish a violation of section 17200, a plaintiff may plead a violation based on any unlawful, unfair or a fraudulent business act or practice.  Cal. Bus. & Prof. Code § 17200.  To plead a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v. McKale,* 25 Cal.3d 626, 635 (1979); *see also Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).  A plaintiff must also establish an "injury in fact" and have "lost money or property *as a result of* such unfair competition" to have standing to pursue a claim under section 17200.  *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 338 (2011) (emphasis added).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation."  *Id.* at 326 (internal quotation marks and citation omitted).

Plaintiff's unfair competition claim fails for two reasons.  First, the Court has dismissed all of the underlying claims, some with limited leave to amend (RESPA and the negligence claim to the extent it is based on a RESPA violation) and others without leave to amend (Cal. Civ. Code § 1711, balance of the negligence claim, and intentional infliction of emotional distress).  Second, to establish injury-in-fact plaintiff must show a causal connection between the unlawful act and the injury.  Plaintiff has not sufficiently pled a connection between the loss of the $50,000 loan and the alleged wrongful acts by defendant.  Accordingly, the Court dismisses plaintiff's unfair competition claim with limited leave to amend to sufficiently allege the predicate RESPA claim.

---

[3] The FAC alleges that defendant violated California Civil Code section 1714. Docket No. 41, FAC ¶126. California Civil Code section 1714 pertains to liability for furnishing alcoholic beverages to minors. *See* Cal. Civ. Code § 1714. However, the FAC also states that "the particularities of the unlawful acts are contained in claim three," and thus for the purposes of this analysis, the Court assumes plaintiff meant to refer to the negligence claim alleged in the third claim.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss with limited leave to amend. **Should plaintiff choose to file an amended complaint, it shall be consistent with the terms of this order and must be filed on or before March 13, 2014.**

**IT IS SO ORDERED.**

Dated: February 26, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE